# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ROCKLYN C. ELLIS, JR.,**

       **Plaintiff,**

-vs-                                                      **Case No. 6:07-cv-2017-Orl-19DAB**

**ALL MY SONS MOVING & STORAGE OF ORLANDO, INC.,**
**AMBROSE PALERMO,**

       **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment by Defendants All My Sons Moving & Storage of Orlando, Inc. and Ambrose Palermo (Doc. No. 30, filed Dec. 30, 2008);

2. Notice of Filing Appendix of Exhibits to Defendants All My Sons Moving & Storage of Orlando, Inc. and Ambrose Palermo's Motion for Summary Judgment (Doc. No. 31, filed Dec. 30, 2008); and

3. Motion for Summary Judgment by Plaintiff Rocklyn C. Ellis, Jr. (Doc. No. 37, filed May 15, 2009).

## Background

### I. Material Facts About Which There Is No Genuine Dispute

Defendant All My Sons Moving & Storage of Orlando, Inc. ("AMS") is a furniture moving business operated in the state of Florida and owned by Defendant Ambrose Palermo. (Doc. No. 1 at 2, filed Dec. 21, 2007; Doc. No. 24 at 2, filed Oct. 20, 2008.) AMS is a commercial moving enterprise engaged in the business of carrying property interstate and intrastate. (Doc. No. 31-2 at

1.) It is also an agent of Bekins Van Lines, a national relocation company which requires AMS to make interstate trips regularly. (*Id.* at 4.)

Plaintiff Rocklyn C. Ellis, Jr. worked for AMS as a "mover" until approximately November of 2007.[1] (Doc. No. 12 at 3, filed Mar. 21, 2008; Doc. No. 15 at 1, filed Apr. 15, 2008; Doc. No. 31-2 at 5.) Initially, Ellis worked as a "loader" or "helper," and his job was to load and unload property transported on AMS trucks. (Doc. No. 31-2 at 4.) In approximately July of 2007, Ellis was promoted to a driver position. (*Id.*) Ellis terminated his business relationship with AMS at the end of November of 2007. (Doc. No. 12 at 3; Doc. No. 31-2 at 5.)

## II. Procedural History

Ellis brought this action against AMS and Palermo alleging two counts: (1) violation of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 215(a)(2) (2006); and (2) violation of the minimum wage provisions of the FLSA, *id.* §§ 206(a)(1), 215(a)(2). (Doc. No. 1.) AMS and Palermo answered the Complaint, asserted six affirmative defenses, and brought a Counterclaim alleging breach of an oral agreement to repay a $2,400.00 loan. (Doc. No. 24.) Also, as required by the FLSA Scheduling Order entered in this case (Doc. No. 9, filed Mar. 10, 2008), both parties filed Responses to the Court's interrogatories concerning the hours worked by Ellis, the wages paid, and the wages allegedly owed, (Doc. Nos. 12, 15).

Currently pending before the Court are two Motions for Summary Judgment. (Doc. Nos. 30, 37.) In the first Motion, filed on December 30, 2008, AMS and Palermo seek summary judgment on Ellis' two FLSA claims and Palermo's Counterclaim. (Doc. No. 30.) Ellis did not file any

---

[1] Ellis contends that he began working for AMS in January of 2004. (Doc. No. 12 at 3.) AMS states that instead Ellis was hired on March 16, 2006 and worked for his father prior to that date. (Doc. No. 15 at 1.)

response in opposition to this Motion. Instead, on May 15, 2009, Ellis moved for summary judgment on Palermo's Counterclaim. (Doc. No. 37.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

Further, according to Rule 56(e), "If the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party." The Eleventh Circuit Court of Appeals has explained that a district court cannot base the entry of summary judgment "on the mere fact that the motion was unopposed, but rather, must consider the merits of the motion." *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A district court must review all of the documents submitted with the motion for summary judgment and must "ensure that the motion itself is supported by evidentiary materials." *Id.* at 1101-02. In this District, parties are expressly warned in advance of the consequences for not opposing summary judgment motions: in the Case Management and Scheduling Order, the Court states, "[f]ailure to oppose any motion for summary judgment may result in the entry of a judgment for the movant without further proceedings." (Doc. No. 18 at 6, filed May 8, 2008.)

**Analysis**

I. **Propriety of Summary Judgment on Ellis' Claim Alleging a Violation of the FLSA's Overtime Provisions**

A. **Arguments of the Parties**

AMS and Palermo argue that summary judgment is appropriate on Count II of the Complaint, Ellis' FLSA overtime claim, for two reasons: (1) AMS did not employ Ellis until March 16, 2006 and therefore is not liable for the hours he worked prior to that date; and (2) Ellis is exempt from the overtime payment requirements of the FLSA pursuant to the motor carrier exemption, 29

U.S.C. § 213(b)(1). (Doc. No. 30 at 4-16.) Ellis has not filed any response or opposition to this Motion.

B.  **Basic Legal Principles**

The FLSA requires certain employers to pay certain employees increased wages for hours worked in excess of forty hours per week. 29 U.S.C. § 207. As an enforcement mechanism, the FLSA allows employees to bring civil actions against their employers to recover unpaid overtime compensation so long as the employees are not exempt from the FLSA's overtime payment requirements. *Id.* § 216(b).

An employee who brings suit under Section 216(b) of the FLSA has the burden of proving that he "performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). Normally an employee may "easily discharge his burden" by securing and producing the relevant employment records from the employer. *Id.* at 687. However, when the employer's records are inaccurate or inadequate, an employee has carried his or her burden when the employee "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Upon such showing, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

When an employer raises the defense of exemption from the overtime provisions of Section 207, the employer bears the burden of proving the applicability of the FLSA exemption by "clear and affirmative evidence." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001)

(quoting *Birdwell v. City of Gadsen, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992)). Such exemptions are "to be narrowly construed against the employer." *Birdwell*, 970 F.2d at 805.

The motor carrier exemption to the FLSA excludes from the Act's overtime requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Under the cited provision, the Secretary of Transportation has the power to prescribe requirements for:

> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

49 U.S.C. § 31502(b). As defined by statute, a "motor carrier" means "a person providing motor vehicle transportation for compensation." *Id.* § 13102(14). A "motor private carrier" means a person, other than a motor carrier, who transports property by motor vehicle when:

> (A) the transportation is as provided in section 13501 of this title;
> (B) the person is the owner, lessee, or bailee of the property being transported; and
> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

*Id.* § 13102(15). Section 13501, cited in subsection (A) of the above-quoted language, describes the transportation of persons, property, or both across state or national borders or on a public highway.

A number of federal regulations set out in more detail the coverage of the motor carrier exception. Pursuant to one such regulation, the exemption applies only to employees "whose work involves engagement in activities consisting wholly or in part of a class of work which is defined" as follows: (1) "that of a driver, driver's helper, loader, or mechanic," and (2) "directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign

commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(b)(2) (2007) (citations omitted). To fall within this exemption, an employee's work activities either "must relate directly to the transportation of materials moving in interstate or foreign commerce within the meaning of the Motor Carrier Act" or, if entirely intrastate, must constitute "a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination." *Id.* § 782.7(a)-(b)(1). In addition, the regulation provides:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job.

*Id.* § 782.2(b)(3).

Of particular relevance to the instant case, the terms "driver" and "loader" are defined in the regulations. A "driver" is "an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce."[2] *Id.* § 782.3(a). The work of a full or part-time driver "directly affects 'safety of operation' within the meaning of

---

[2] "This definition does not require that the individual be engaged in such work at all times; it is recognized that even full-duty drivers devote some of their working time to activities other than such driving. 'Drivers' as thus officially defined include, for example, such partial-duty drivers as the following, who drive in interstate or foreign commerce as part of a job in which they are required also to engage in other types of driving or nondriving work: individuals whose driving duties are concerned with transportation some of which is in intrastate commerce and some of which is in interstate or foreign commerce within the meaning of the Motor Carrier Act; individuals who ride on motor vehicles engaged in transportation in interstate or foreign commerce and act as assistant or relief drivers of the vehicles in addition to helping with loading, unloading, and similar work; drivers of chartered buses or of farm trucks who have many duties unrelated to driving or safety of operation of their vehicles in interstate transportation on the highways; and so-called 'driver-salesmen' who devote much of their time to selling goods rather than to activities affecting such safety of operation." 29 C.F.R. § 782.3(a).

section 204 of the Motor Carrier Act whenever he drives a motor vehicle in interstate or foreign commerce within the meaning of that act." *Id.* A "loader" is "an employee of a carrier subject to section 204 of the Motor Carrier Act . . . whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country."[3] *Id.* § 782.5(a). Employees whose work falls into these categories are exempt from the overtime requirements of the FLSA. *Id.* §§ 782.3(b), 782.5(b).

C.     **Merits of the Arguments of AMS and Palermo**

AMS and Palermo contend that they are entitled to summary judgment because Ellis falls within the motor carrier exemption. They also argue that Ellis was employed by his father instead of by AMS prior to March of 2006, a fact disputed in the Answers to Court Interrogatories submitted by Ellis. However, even assuming without deciding that Ellis was employed by AMS during the entire time that he alleges, Ellis' claim under the FLSA fails because he is subject to the motor carrier exemption.

The undisputed evidence provided by AMS and Palermo demonstrates that AMS is licensed by the Department of Transportation to engage in interstate commerce and is subject to the Federal Motor Carrier Safety Regulations. (Doc. No. 31-2 at 1-2.) AMS advertises "Direct Service To All Points in USA" in its Yellow Pages advertisement. (Doc. No. 31-3.) During the relevant time period, approximately ten to twelve percent of AMS' moves were interstate trips, generating fifteen

---

[3] " A 'loader' may be called by another name, such as 'dockman,' 'stacker,' or 'helper,' and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a 'loader,' in work directly affecting 'safety of operation' so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." 29 C.F.R. § 782.5(a).

to seventeen percent of AMS' total revenue. (Doc. No. 31-2 at 5.) Also, AMS is a Bekins Van Lines agent; therefore, AMS employees, including Ellis, "regularly loaded and unloaded Bekins trucks that transported property into and out of Florida." (*Id.*)

Ellis was hired by AMS "as a loader to load and unload property on AMS trucks for transportation both within and outside of Florida." (*Id.* at 4.) He "was responsible for exercising discretion regarding how to load the property onto trucks." (*Id.*; *accord* Doc. No. 31-8 at 3.) In July of 2007, AMS promoted Ellis to a driver position. (Doc. No. 31-2 at 4.) During his employment, Ellis "participated in at least thirteen (13) out-of-state trips, twelve as a loader or helper and at least one as a driver." (*Id.*) He was expected to make out-of-state trips as was necessary. (*Id.*)

Based on the undisputed facts presented by AMS and Palermo, AMS is a motor carrier and engages in the interstate transportation of property. Ellis worked as a "loader" and a "driver" within the meaning of the applicable regulations, and his work activities directly affected the safety of operation of motor vehicles on the public highways. Therefore, he is exempt from the FLSA's overtime payment requirements, and summary judgment in favor of AMS and Palermo on Count II of the Complaint is appropriate.

## II.   Propriety of Summary Judgment on Ellis' Claim Alleging a Violation of the FLSA's Minimum Wage Provisions

In Count I of the Complaint, Ellis alleges that he worked for the pay period of November 15, 2007 to November 21, 2007 but received less than the minimum wage for hours worked. (Doc. No. 1 at 3-4.) This is the one and only time Ellis has discussed this claim in Court filings. In his Answers to the Court's Interrogatories, Ellis makes no mention of this claim and refers only to overtime hours worked. (*See* Doc. No. 12.) Furthermore, Ellis has offered no evidence to support his minimum wage claim in opposition to Defendants' Motion for Summary Judgment. In contrast,

AMS' summary of Ellis' work indicates that Ellis was paid well over minimum wage, at a rate of eleven dollars per hour, for the pay period ending November 20, 2007. (Doc. No. 15 at 4.) Upon review of the record, the Court concludes that there is no genuine issue of material fact that Ellis was denied minimum wages, and Ellis appears to have abandoned this claim. As the Eleventh Circuit has stated:

> There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; *grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned*.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted, emphasis added). Therefore, summary judgment in favor of AMS and Palermo on Count I of the Complaint is appropriate.

### III. Supplemental Jurisdiction over Palermo's Counterclaim for Breach of Contract

In the Amended Answer, Palermo brought a state law Counterclaim for breach of contract. (Doc. No. 24 at 5.) Palermo alleges that on June 17, 2007, he lent Ellis approximately $2,400.00, and Ellis agreed to repay Palermo at a rate of $50.00 per week. (*Id.*) According to Palermo, Ellis repaid Palermo $1,760.00 of the amount lent but still owes Palermo $640.00. (*Id.*) Ellis denies these allegations and raises seven affirmative defenses. (Doc. No. 26, filed Oct. 23, 2008.)

The proposed basis for subject matter jurisdiction over Palermo's Counterclaim appears to be supplemental jurisdiction. The relevant jurisdictional statute provides in pertinent part: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). With respect to state law counterclaims, this language makes clear that a court has supplemental

jurisdiction over a compulsory counterclaim which by definition "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). On the other hand, the language is not clear as to whether a district court has supplemental jurisdiction over a permissive counterclaim, and the Eleventh Circuit has not yet opined on the issue. *Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, No. 6:07-cv-1091-Orl-19GJK, 2009 WL 320855, at *16 n.20 (M.D. Fla. Feb. 9, 2009) (citation omitted). This Court need not reach the issue, however, because even if the Court has supplemental jurisdiction over the Counterclaim, the Court declines to exercise such jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). This provision states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* When deciding whether to exercise its discretion in this manner, a district court should consider "judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together." *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966)).

In the instant case, the Court has granted summary judgment on the FLSA claims over which it had original jurisdiction, and the only remaining claim is Palermo's state law Counterclaim. This Counterclaim involves an oral agreement between two Florida residents, and the amount in controversy is $640.00. The record does not reveal any connection between the purported agreement and the FLSA claims over which the Court possessed federal question subject matter jurisdiction. Therefore, the Counterclaim is purely a state law matter between non-diverse parties, and the proper forum for resolution of the dispute is in the state courts. In the interests of judicial

economy, the Court declines to exercise supplemental jurisdiction over Palermo's Counterclaim, and such claim is dismissed without prejudice to refiling in state court.

**Conclusion**

Based on the foregoing, the Motion for Summary Judgment by Defendants All My Sons Moving & Storage of Orlando, Inc. and Ambrose Palermo (Doc. No. 30, filed Dec. 30, 2008) is **GRANTED IN PART AND DENIED IN PART**. Summary Judgment is **GRANTED** as to Counts I and II of the Complaint and **DENIED AS MOOT** as to the Counterclaim of Palermo. The Court declines to exercise supplemental jurisdiction over the Counterclaim and **DISMISSES** such claim **WITHOUT PREJUDICE** to refiling in state court. The Motion for Summary Judgment on the Counterclaim by Plaintiff Rocklyn C. Ellis, Jr. (Doc. No. 37, filed May 15, 2009) is **DENIED AS MOOT**. The Clerk of the Court is directed to enter judgment in favor of Defendants and to close this case.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 5, 2009.

*/s/ Patricia C. Fawsett*
PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record