**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROCKLYN C. ELLIS, JR.,**
          **Plaintiff,**

**-vs-**                                                       **Case No. 6:07-cv-2017-Orl-19DAB**

**ALL MY SONS MOVING & STORAGE**
**OF ORLANDO, INC., AMBROSE**
**PALERMO,**
          **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR ATTORNEY'S FEES (Doc. No. 45)**
>
> **FILED:**       **June 22, 2009**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Defendants move for an award of attorney's fees of approximately $25,000 pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, arguing that Plaintiff litigated his FLSA claim against Defendants in bad faith. Plaintiff contends that no award is warranted because his failure to file a response to the summary judgment was not an "admission" that his claims were unmeritorious, Defendants failed to conduct a Local Rule 3.01(g) conference before filing their Motion, and the amount of fees sought is excessive. For the reasons set forth below, the Court recommends that the Motion for Attorney's Fees be **DENIED**.

# I. BACKGROUND FACTS AND PROCEDURAL HISTORY[1]

Defendant All My Sons Moving & Storage of Orlando, Inc. ("AMS") is a furniture moving business operated in the state of Florida and owned by Defendant Ambrose Palermo. Doc. No. 1 at 2; Doc. No. 24 at 2. AMS is a commercial moving enterprise engaged in the business of carrying property interstate and intrastate. Doc. No. 31-2 (Summary Judgment Ex.) at 1. It is also an agent of Bekins Van Lines, a national relocation company which requires AMS to make interstate trips regularly. *Id.* at 4.

Plaintiff Rocklyn C. Ellis, Jr. worked for AMS as a "mover" from at least Mach 2006[2] until November of 2007. Doc. No. 12 at 3; Doc. No. 15 at 1; Doc. No. 31-2 at 5. Initially, Ellis worked as a "loader" or "helper," and his job was to load and unload property transported on AMS trucks. Doc. No. 31-2 at 4. In approximately July 2007, Ellis was promoted to a driver position. *Id.* Ellis terminated his business relationship with AMS at the end of November 2007. Doc. No. 12 at 3; Doc. No. 31-2 at 5.

On December 21, 2007, Ellis filed suit against AMS and Palermo alleging two counts: (1) violation of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 215(a)(2) (2006); and (2) violation of the minimum wage provisions of the FLSA, *id.* §§ 206(a)(1), 215(a)(2). Doc. No. 1. AMS and Palermo answered the Complaint, asserted six affirmative defenses, and brought a Counterclaim alleging breach of an oral agreement to repay a

---

[1] The Background Facts and Procedural History are taken from Judge Fawsett's order granting summary judgment to Defendants on the FLSA claims; the state claim for breach of contract was dismissed, and the motion for summary judgment as to that claim was dismissed as moot. Doc. No. 40.

[2] Although the date that Ellis began working for AMS was contested, Judge Fawsett did not need to reach the issue because summary judgment was granted on the basis of the motor carrier exemption. Defendants argued that, prior to the time Ellis worked for AMS, he worked for his father, an independent contractor for Defendants. Doc. No. 40 at 8; Doc No. 31-2 ¶ 10.

$2,400.00 loan. Doc. No. 24. Also, as required by the FLSA Scheduling Order entered in this case (Doc. No. 9), both parties filed Responses to the Court's interrogatories concerning the hours worked by Ellis, the wages paid, and the wages allegedly owed. Doc. Nos. 12, 15.

On December 30, 2008, Defendants filed their Motion for Summary Judgment, seeking summary judgment on Ellis's two FLSA claims and Palermo's counterclaim for breach of contract. Doc. No. 30. Ellis did not file a response in opposition to the Motion, but on May 15, 2009, Ellis moved for summary judgment on Palermo's counterclaim. Doc. No. 37. On June 5, 2009, Judge Fawsett granted Defendants' Motion for Summary Judgment, holding that the motor carrier exemption barred Plaintiff's FLSA claims, and denied as moot the cross-summary judgment issues on Defendants' counterclaim, declining to exercise supplemental jurisdiction; judgment was entered on June 8, 2009. Doc. Nos. 40, 41. On June 22, 2009, Defendants filed their Motion for Attorney's Fees, seeking a reimbursement of fees as a sanction against Plaintiff and his counsel. Doc. No. 45.

## II. ANALYSIS

### A. Award of Attorney's Fees to Prevailing Defendants in FLSA cases

It is the general rule in this country that, unless Congress provides otherwise, parties are to bear their own attorney's fees. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (tracing the origins and development of the American Rule)). Absent a specific provision of Congress, a litigant may not recover attorney's fees. *Alyeska Pipeline,* 421 U.S. at 257.

The FLSA does not provide for an award of fees to a prevailing defendant. Section 216(b) of the FLSA makes fee awards mandatory for prevailing plaintiffs; however, the FLSA is not a "two-way

fee-shifting statute" – attorney's fees are awarded to prevailing plaintiffs, but no similar provision is made for prevailing defendants. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542-43 (11th Cir. 1985) (citing 29 U.S.C. § 216; *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 & n. 5); *Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004). Although the FLSA does not specifically provide attorney's fees to prevailing defendants, the Eleventh Circuit has held that fees may be awarded to a prevailing defendant in an FLSA case under the court's "inherent power" to assess attorney's fees as a fine for the willful disobedience of a court order, or when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons" by filing suit, or in conduct preceding or during litigation. *Kreager,* 775 F.2d at 1543 (citing *Alyeska Pipeline*, 421 U.S. at 258-59). However, "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Christiansburg Garment*, 434 U.S. 412, 422 (1978). Bad faith is a stringent standard that makes it difficult for a defendant to prevail. *Murray v. Playmaker Services, LLC*, 548 F.Supp.2d 1378, 1382 (S.D. Fla. 2008), *aff'd*, 2009 WL1291769 (11th Cir. 2009) (unpublished).

When a trial court awards attorney's fees to a defendant who has shouldered the burden of bad faith litigation, the court is required to apply the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). *See Kreager,* 775 F.2d at 1543-44 (citing *Hedrick v. Hercules, Inc.*, 658 F.2d 1088, 1097 (5th Cir.1981) as applying *Johnson* factors to fee awards in FLSA context). The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The court is also required to consider a thirteenth factor in addition to the *Johnson* analysis: the plaintiff's financial resources. *Kreager,* 775 F.2d at 1544 (citing *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911 (11th Cir. 1982). However, a plaintiff's financial condition "may not solely justify the district court's refusal to award any fee to a deserving defendant: 'A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence.'" *Kreager,* 775 F.2d at 1544 (quoting *Durrett*, 678 F.2d at 917).

**B. Award of Attorney's Fees Against Counsel under 28 U.S.C. § 1927**

Defendants move for an award of fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927, which reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927. In order to justify an imposition of sanctions under this section, three requirements must be observed: 1) an attorney must engage in "unreasonable and vexatious" conduct; 2) such conduct must "multiply the proceedings;" and 3) the amount of the sanctions cannot exceed the costs incurred due to the conduct. *Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1312 (M.D. Fla. 2002) (citing *McMahan v. Toto*, 256 F. 3d 1120, 1128 (11th Cir. 2001)). The meaning of "unreasonable and vexatious" is subject to interpretation but "at [a] minimum . . . merely unintended, inadvertent, and negligent acts will not support the imposition of sanctions under § 1927; [r]ather, the

power to impose sanctions under § 1927 should be exercised 'only in instances of a serious and studied disregard for the orderly processes of justice.'" *Jerelds*, 194 F. Supp. 2d at 1312 (internal citations omitted). "Black's Law Dictionary defines the term 'vexatious' to mean 'without reasonable or probable cause or excuse; harassing; annoying' It further defines 'vexatious suit' to mean a 'lawsuit instituted maliciously and without good cause.'" *Smartt v. First Union National Bank*, 245 F.Supp.2d 1229, 1234-35 (M.D. Fla. 2003). Section 1927 "does not require a specific finding that counsel acted in, or engaged in, conduct tantamount to, bad faith." *Cordoba v. Dillards, Inc.*, 419 F.3d 1169, 1178 n.6 (11th Cir. 2005). When counsel "knowingly or recklessly pursues a frivolous claim," the district court may order sanctions under § 1927. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007). When an attorney has "unreasonably and vexatiously" multiplied the proceedings, the attorney must be required to personally satisfy the fees incurred by such conduct. *Dictiomatic, Inc. v. United States Fidelity & Guaranty Company*, 127 F.Supp.2d 1239, 1247 (S.D. Fla. 1999).

As this Court has previously found, a § 1927 fee award cannot be based solely on a frivolous complaint:

> The language of § 1927 makes clear that it only applies to unnecessary filings after the law suit has begun and does not apply to initial pleadings. . . . [T]he filing of a frivolous complaint may be sanctioned by Rule 11 or a court's inherent power, but not pursuant to § 1927.

*Velez v. Levy World Limited Partnership,* 6:03-cv-878-Orl22DAB, 2007 WL 842768, *4 (M.D. Fla. March 20, 2007) (internal citations omitted).

### C. Application to Facts

Defendants' arguments turn on the fact that Plaintiff did not respond to Defendants' motion for summary judgment, which Defendants characterize as "an admission this his claims were without

-6-

merit" and evidence of his bad faith in continuing to pursue his claims long after it should have been apparent that his claims were false and a tacit admission that *Plaintiff* knew his overtime claim was barred; the fact that Plaintiff proceeded despite this knowledge was evidence of bad faith, they argue. Doc. No. 45 at 5. Defendants argue the case was continued "in the face of irrefutable evidence that Plaintiff's overtime claim was barred by the Motor Carrier Act." Doc. No. 45 at 4.

Plaintiff argues that merely failing to respond to a summary judgment does not constitute an admission that his claims were made in bad faith, and did not automatically entitle the movant to the entry of summary judgment, citing *Barefield v. Rob Noojin Roofing, Inc.*, 2009 WL 51278, *4 (M.D. Fla. 2009) (failure to give case attention it required did not demonstrate bad faith). Plaintiff argues that there is no indication that his FLSA claims were filed for any purpose other than to recover allegedly unpaid overtime compensation.

It was not as self-evident as Defendants seem to argue that All My Sons Moving & Storage *of Orlando*[3], Inc. ("AMS"), would qualify under the motor carrier exemption, 29 U.S.C. § 213(b)(1). In Judge Fawsett's description of the federal regulations governing the motor carrier exemption, she pointed out that the exemption applies to certain employees of motor carriers transporting materials in "interstate commerce" or, if entirely intrastate, "part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination." *See* Doc. No. 40 at 6-7. Judge Fawsett's determination that AMS did indeed carry property "interstate" and that AMS was an agent of a national relocation company which "required AMS to make interstate trips regularly" was based on the uncontroverted Affidavit of Ambrose Palermo, President of AMS, which was *not* filed until the Defendants filed their Motion for Summary Judgment. *See* Doc. No. 40 at 1-2 (citing Doc. No.

---

[3]Emphasis by the Court.

31-2 at 1, 4). Judge Fawsett determined several issues, based on the Palermo Affidavit, that supported her finding the motor carrier exemption applied:

> [A]pproximately ten to twelve percent of AMS' moves were interstate trips, generating fifteen to seventeen percent of AMS' total revenue. . . . Ellis was hired by AMS "as a loader to load and unload property on AMS trucks for transportation both within and outside of Florida." . . . . During his employment, Ellis "participated in at least thirteen (13) out-of-state trips, twelve as a loader or helper and at least one as a driver."

Doc. No. 40 at 8-9 (citing Doc. No. 31-2 at 4-5).

Beyond arguing that "Plaintiff's case lacked any basis in law or fact," Defendants make no mention on any previous representations to Plaintiff or counsel that AMS was involved in interstate commerce or that Plaintiff's "helper" position qualified as a "loader" for the motor carrier exemption. As other courts have found, "the question of whether a particular employee is a 'loader' requires an individualized determination into the actual work performed by that employee." *Williams v. Maryland Office Relocators*, 485 F.Supp.2d 616, 619 (D. Md. 2007) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947)); *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1108 (4th Cir. 1997) (loader must devote "a substantial part" of his time to activities affecting safety of operation, while handling of freight may be so trivial, casual, occasional or limited to not qualify as "loading" which affects safety of operation). The FLSA is to be narrowly construed against finding an exemption and an employer relying upon an exemption from the overtime prescriptions of § 207 has the burden of proving its employees are plainly and unmistakably exempt. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206 (1966). In this case, Judge Fawsett weighed the evidence and determined on summary judgment that Plaintiff's "helper" position qualified as a loader within the meaning of the federal

regulations. It does not mean that Plaintiff's claims for overtime were "meritless" or pursued in bad faith.

Plaintiff participated as a driver (which he did not become until July 2007, four months before his employment ended) in a *single* interstate move. *See* Doc. No. 31-2 at 4-5. Prior to that time, Plaintiff was categorized by All My Sons of Orlando, Inc. as a "helper" for fifteen months (from March 2006 to July 2007). Defendants contend Plaintiff's claims were made in bad faith because it was "so apparent and overwhelming" that Plaintiff qualified for the exemption since "he loaded and unloaded trucks with no training, and that he engaged in other safety-affecting activities." Doc. No. 45 at 4.

Based on the time sheets attached to the bills of lading (Doc. No. 31-5), it appears that Plaintiff was employed as a "helper" on moves in approximate four- to ten-hour blocks of time loading trucks at locations in the Orlando area, *i.e.*, he did not travel with the load to unload it on the other end, and there is no indication that, as a "helper," Plaintiff would know where the ultimate destination of the materials; based on Palermo's affidavit, the vast majority, or 88% to 90% of the moves, were *not* interstate. Defendants have not made any showing that Plaintiff was aware All My Sons of Orlando, Inc. was engaged in "interstate" commerce[4] or that he was aware the motor carrier exemption would apply to his circumstances. The Court would not expect for it to be "apparent and overwhelming" to an individual employed as a "helper" loading trucks within Florida, and making a single interstate delivery in the course of his 18 month employment, to appreciate that his overtime claims were barred by the federal motor carrier exemption. *See, e.g.*, *Murray v. Playmaker Services, LLC*, 548 F.Supp.2d

---

[4]The single page of Plaintiff's deposition testimony submitted in support of summary judgment vaguely refers to "picking up from out of state" but the context is unclear and Plaintiff's response is not definitive on the matter of bad faith. *See* Doc. no. 31-8 at 3.

1378, 1382 (S.D. Fla. 2008) (simply because court found no merit to the claim and plaintiff lost on summary judgment on FLSA claim, this was insufficient to prove bad faith on part of plaintiff), *aff'd*, 2009 WL1291769 (11th Cir. 2009) (unpublished).

Defendants also argue that Plaintiffs' claim for violation of the minimum wage laws, for AMS' failure to pay him his last two weeks of pay (amounting to $38.50 – *see* Doc. No. 15 at 4), was made in bad faith. As is quite common in FLSA litigation, based on the Court's familiarity with literally hundreds of cases, plaintiffs are often mistaken about whether they have been paid for their last pay period. The employer has the burden of keeping records. Once the records are produced from the employer, this narrow issue of the last pay period is generally undisputably resolved based on the records. There is no evidence that Plaintiff's claim for his last paycheck (from work for November 15 to 21, 2007) was made in bad faith, as opposed to his simply being mistaken. The very last paycheck on December 4, 2007 was for $38.50, compared to previous paychecks in the $200 to $300 range. Doc. No. 15 at 2-4. In addition, the claim for the last week's pay was an extremely minor portion of Plaintiff's case compared to his overtime claim for $26,000. *See* Doc. No. 12.

As counsel for Plaintiff points out[5], Defendants have failed to devote any analysis in their three- page argument specifically to their claims for § 1927 sanctions against Plaintiff's counsel for multiplying the proceedings "unreasonably and vexatiously." Counsel did not respond to Defendants' summary judgment motion, in the face of evidence first presented at the summary judgment stage, from AMS' President that AMS was engaged in interstate commerce; there is nothing in the record to charge Plaintiff's counsel with knowledge of the extent (ten to twelve percent) of AMS' interstate commerce, *e.g.,*. Palmero deposition testimony to the same effect or correspondence indicating this

---

[5]*See* Doc. No. 47 at 2 n.1.

fact. Even if Plaintiff's counsel had been aware that AMS was involved in interstate commerce for purposes of Plaintiff's driver position, there remained the fact-intensive issue of whether Plaintiff's "helper" position constituted a "loader" within the motor carrier exemption.

Based on the record before the Court, it was not until summary judgment that Defendants made forceful arguments on the fact-intensive issue that Plaintiff's "helper" position qualified as a "loader" under the motor carrier exemption. It is difficult to see how Plaintiff's simply losing at the summary judgment stage multiplied the proceedings "vexatiously" since the evidence of interstate commerce and argument regarding the "helper" position were first introduced at summary judgment.[6] As this Court previously observed:

> [I]t is important that courts not engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Velez v. Levy World Limited Partnership*, 6:03-cv-878-Orl22DAB, 2007 WL 842768, *3 (M.D. Fla. March 20, 2007) (citing *Cordoba v. Dillards, Inc.*, 419 F.3d 1169, 1181-82 (11th Cir. 2005)); *cf. Murray*, 548 F.Supp.2d at 1383 (plaintiff's counsel liable for attorney's fees under 28 U.S.C. § 1927 where, by close of discovery, application of the economic realities test showed that plaintiff was an independent contractor not covered by the FLSA and instead of advising client to voluntarily dismiss the case at that time, counsel filed an affidavit directly contradicting plaintiff's own deposition

---

[6]Plaintiff's counsel obviously should have filed *some* response to the Motion for Summary Judgment. If nothing else, he owed opposing counsel and the Court the courtesy of stating that no opposition would be filed. For this failing, he is admonished. However, his failure to do so did not "multiply" the proceedings.

testimony in an attempt to salvage the litigation). Defendants have not shown that Plaintiff's counsel did anything to "unreasonably and vexatiously" multiply the proceedings in this case.

### D. Defendants fail to state an argument for Rule 11 sanctions

Defendants mention Rule 11 just once in their Motion (Doc. No. 45 at 3) but do not set forth any argument whatsoever as to Rule 11. Moreover, Defendants have failed to meet the procedural requirements of Rule 11 in presenting the motion. Rule 11(c)(2) provides that: "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). This "safe harbor" provision is not a mere technicality, but allows a party to avoid the imposition of sanctions, by timely withdrawing the offending pleading. *See Morroni v. Gunderson*, 169 F.R.D. 168, 171 (M.D. Fla. 1996) ("Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely . . . Given the 'safe harbor' provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case.") (quoting Rule 11, advisory committee notes). Defendants argue only that Plaintiff's claims were filed in bad faith and should be sanctioned under the Court's inherent power; as such, there is no basis for a Rule 11 sanction.

It is respectfully **RECOMMENDED** that the Motion for Attorney's Fees be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 27, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy